No. 28,472.

JOUETT SHOUSE, DUDLEY DOOLITTLE and PHIL D. MORELOCK, *Appellees*, v. THE CONSOLIDATED FLOUR MILLS COMPANY, *Appellant*.

(277 Pac. 54.)

Opinion filed May 4, 1929.

*J. R. Beeching*, of Hutchinson, for the appellant.

*C. M. Williams, D. C. Martindell, W. D. P. Carey* and *E. Carey, Jr.,* all of Hutchinson, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiffs prosecute this action to recover in the sum of $11,500 alleged to be due them from the defendant for services rendered by them in securing legal adjustment of federal income tax of the defendant. Judgment was rendered in favor of the plaintiffs, and the defendant appeals.

The contract entered into between the plaintiffs as attorneys and the defendant contained the following provision:

"The attorneys shall be entitled to receive from the corporation an amount equivalent to 15 per cent of that portion of said taxes which have or may be assessed in addition to those already paid by the corporation, which the attorneys may save the corporation, together with the same percentage fee for any of the said taxes already paid by the corporation, which the said attorneys may succeed in having refunded to the corporation. The sum of $500 has been paid, and receipt is hereby acknowledged, being advance payment of fees."

Services were performed by the plaintiffs for the defendant, after which the defendant discharged the plaintiffs and employed other attorneys to conclude the matter. The plaintiffs were paid $500 at the time the contract was made. They sued for an additional $11,500 and recovered judgment for that amount.

■ The defendant contends that the contract is unenforceable because it is against public policy and violates section 203 of 31 U. S. C. A. (R. S. § 3477). It contends that it is against public policy in this state to enforce contracts made for the purpose of interfering with any of the functions of government. The defendant argues that the contract was one between the defendant and the plaintiffs to assist the defendant to avoid the payment of taxes. That was not the purpose of the contract. It was one by which the plaintiffs agreed to assist the United States internal revenue officers to come to a correct conclusion concerning the amount of taxes that should be paid to the government by the defendant. The United States income tax law is complicated, and only those who are familiar with its provisions are able to reach correct conclusions concerning the amount of tax that should be paid by any large corporate business. Even those familiar with that law often reach incorrect conclusions concerning it. A considerable number of lawyers have prepared themselves to assist income taxpayers in determining the amount of tax they should pay. The work of these lawyers assists the government, and they are recognized as being able and proficient in that field of operation. It is right and proper that they be paid for their services. There is nothing in the public policy which forbids an attorney at law being employed in matters of this kind or receiving compensation for such services.

The defendant relies on 31 U. S. C. A., section 203 (R. S. § 3477). That section reads:

"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, except as provided in section 204 of this title, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same. The provisions of this section shall not apply to payments for rent of post-office quarters made by postmasters to duly authorized agents of the lessors."

That statute prohibits the transfer and assignment of a claim against the United States until after the claim has been allowed and a warrant therefor has been issued.

The defendant argues that the portion of the contract which provides that the plaintiffs shall be paid a fee for the refund of such taxes as had been paid amounted to an assignment or transfer of the claim upon the United States, and brings this case within the prohibitions of the statute. The contract did not provide for the assignment or transfer of any part of the claim against the government, if there was one, or of any part of the money that should be refunded.

The compensation was to be an amount equal to fifteen per cent of what might be refunded. That brings this case within *Nutt v. Knut*, 200 U. S. 12, 20, where that court said:

"Such an agreement did not give the attorney any interest or share in the claim itself nor any interest in the particular money paid over to the claimant by the government. It only established an agreed basis for any settlement that might be made, after the allowance and payment of the claim, as to the attorney's compensation." (p. 21.)

That decision was rendered on error from the supreme court of Mississippi, and involved the prosecution of a claim before the courts of the United States, before the departments of the government, and before congress. See, also, *Wright v. Tebbitts*, 91 U. S. 252; *Stanton et al. v. Embrey, Administrator*, 93 U. S. 548; *Taylor v. Bemiss*, 110 U. S. 42.

The defendant argues that contingent fees to lawyers are to be discouraged. That has not been the policy of this state. Contingent fees have been recognized as legitimate and have been enforced.

In *Sedbrook v. McCue,* 104 Kan. 813, 180 Pac. 787, the following language was used:

"A contract between a client and attorneys to the effect that they would carry on the litigation mentioned and receive as their compensation one-half of the properties and moneys that might be saved by their efforts, the client to pay the costs, was not illegal or against public policy." (Syl. ¶ 3.)

See, also, *Aultman v. Waddle,* 40 Kan. 195, 201, 19 Pac. 730; *Paving Co. v. Botsford,* 56 Kan. 532, 44 Pac. 3; *Stevens v. Sheriff,* 76 Kan. 124, 90 Pac. 799.

In *Stanton et al. v. Embrey, Administrator,* supra, the court said:

"Coming to the merits, the first objection of the plaintiffs in error is that the contract set up in declaration is one for a contingent compensation. Such a defense, in some jurisdictions, would be a good one; but the settled rule of law in this court is the other way. Reported cases to that effect show that the proposition is one beyond legitimate controversy." (p. 556.)

The defendant cites *Jones v. Blacklidge,* 9 Kan. 562, where this court declared that—

"A contract between two parties whereby one party agrees to prosecute and collect a claim for the other, against the United States, for twenty per cent of the amount thereof, is in contravention of the first section of the act of congress to prevent frauds upon the treasury of the United States, and therefore void." (Syl.)

The statute there referred to is the one quoted herein and referred to as section 203, 31 U. S. C. A. (R. S. § 3477). That case was decided in 1872. *Stanton et al. v. Embrey, Administrator,* 93 U. S. 548, was decided by the United States supreme court in 1876. *Nutt v. Knut,* 200 U. S. 12, was decided in 1905. *Jones v. Blacklidge,* supra, is not in harmony with the decisions of the United States supreme court, nor with the subsequent decisions of the supreme court of this state.

■ Complaint is made of instruction No. 7 given by the court. That instruction reads:

"7. I instruct you that the undisputed evidence in this case shows that the value of plaintiffs' services, if plaintiffs are entitled to recover at all, is not less than $12,000 nor more than $15,000, and that in this case, if you find for the plaintiff, they having only claimed in their petition $12,000, are limited to

the recovery of $12,000, and you will, therefore, assess the amount of their recovery at $12,000, less $500 which has already been advanced by the defendant, with interest from the date of plaintiff's discharge at the rate of 6 per cent per annum."

That instruction should be read in connection with instruction No. 3, as follows:

"The jury are further instructed that where attorneys are employed to perform legal services, and proceed under the contract of employment and perform part of the services contemplated by the contract, but are prevented from completing the performance by the wrongful act of the client in discharging the attorneys, that the attorneys are entitled to recover from the client the reasonable value, if any, of the services shown to have been performed up to the date of the discharge, and in this case not more than the amount prayed for in the petition, to wit: $11,500. And in arriving at the amount of compensation, if any, found due, you should consider the evidence with reference to the nature and importance of the matter involved, the standing of the attorneys, the amount of time devoted to the matter by the attorneys, the results obtained, and all other elements in evidence indicating what was done by the attorneys under the contract, and then fix an amount of compensation which is fair and reasonable for said services in the light of the evidence of experts as to the value of such services; and in this connection you are permitted to consider the opinions of the attorneys themselves as to the value of their services."

The defendant argues that instruction No. 7 was erroneous because it in effect directed the jury to return a verdict in favor of the plaintiffs for the sum of $11,500.

In *Bentley v. Brown,* 37 Kan. 14, 14 Pac. 434, this court said:

"A court or jury trying the question of the value of legal services is not bound to accept as conclusive the opinions given by attorneys respecting such value. While the opinions of professional witnesses, who are familiar with the character and compensation usually paid for legal services, are entitled to great weight, such opinions are only to be considered in connection with the other testimony in the case, in the light of which, and of its own general knowledge, the court or jury should for itself determine the value." (Syl. ¶ 1.)

See, also, *Anthony v. Stinson,* 4 Kan. 211; *A. T. & S. F. Rld. Co. v. Thul,* 32 Kan. 255, 261, 4 Pac. 352; *Ball v. Hardesty,* 38 Kan. 540, 542, 16 Pac. 808; *C. K. & W. Rld. Co. v. Drake,* 46 Kan. 568, 26 Pac. 1039; *C. K. W. & N. W. Rld. Co. v. Ryan,* 49 Kan. 1, 15, 30 Pac. 108; *Noftzger v. Moffet,* 63 Kan. 354, 359, 65 Pac. 670; *Cudahy v. Broadbent,* 70 Kan. 535, 544, 79 Pac. 126; *Wade v. Electric Co.,* 98 Kan. 366, 158 Pac. 28; *Epp v. Hinton,* 102 Kan. 435, 170 Pac. 987; Lawson on Expert and Opinion Evidence, 2d ed., p. 282; and 22 C. J. 728.

The instruction violated the rule declared in these cases and was erroneous. There is no criticism of instruction No. 3.

■ The defendant complains of admonitions given by the court to the jury concerning agreement after it had developed that the jury was having difficulty in reaching a verdict. On two separate occasions the court admonished the jury concerning agreement, in the first of which the court said:

"It isn't the duty of any one juror to take an obstreperous or obstinate stand where there are reasonable grounds for minds to differ and so hang the jury."

In the second admonition given to the jury the court stated:

"I feel like you should endeavor to accommodate your views or differences to the others and come to an understanding or agreement, if it can humanly be done."

The language used by the court went further than was justified, but it is not necessary for this court to now say that a reversal is compelled for that reason.

■ The court gave to the jury copies of the pleadings which were involved, voluminous and technical. The defendant complains of that act of the court. The abstract of the defendant recites that "after stating the issues, the court instructed the jury as follows over defendant's objection." Then follows the second instruction given by the court which contained an epitome or summary of the issues made by the pleadings and the evidence, and which told the jury how those issues should be determined so far as the burden of proof was concerned.

In *Williamson v. Oil and Gas Co.*, 94 Kan. 238, 242, 146 Pac. 316, this court used the following language:

"It appears that in cases where the pleadings are involved in complex and intricate phraseology it is not good practice and may be reversible error to *send* the pleadings to the jury; in cases where the pleadings are simple the practice of *sending* them is not commended, but is not reversible error; but where the court merely paraphrases and incorporates the plain and simple language of the pleadings in stating the issues to the jury, it is not error nor even ground for just criticism."

Because of the error in the instructions concerning the amount of recovery, the judgment is reversed and a new trial is directed.